UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LEON E. CAMPBELL,<br><br>    Plaintiff,<br><br>v.<br><br>NEVADA PROPERTY 1 LLC,<br><br>    Defendant. | Case No. 2:10-cv-02169-APG-PAL<br><br>**ORDER GRANTING MOTION TO CONFIRM ARBITRATION AWARD**<br><br>(Dkt. No. 24) |

I.  **BACKGROUND**

    The origin of this dispute is a failed condominium purchase at The Cosmopolitan of Las Vegas in Las Vegas, Nevada. In December 2010, Plaintiff Leon E. Campbell ("Campbell" or "Buyer") filed a complaint against Nevada Property 1 LLC ("Nevada Property" or "Seller"), the current owner of the Cosmopolitan, seeking declaratory judgment concerning his asserted right to rescind a contract to purchase a condominium (the "Contract"). (Dkt. No. 1.) In October 2011, the Court granted Nevada Property's motion to compel arbitration. (Dkt. No. 5.) The Ninth Circuit dismissed Campbell's subsequent appeal of the order compelling arbitration because it was interlocutory in nature. (Dkt. No. 15.) This Court then denied Campbell's motion for reconsideration. (Dkt. No. 18.)

    On January 2, 2013, arbitrator Philip J. Dabney (the "Arbitrator") issued his final order in Nevada Property's favor. (Dkt. No. 24-2 at 2–4.) He awarded Nevada Property liquidated damages in the amount of $74,625 (15% of the purchase price of the condominium) and attorney's fees and costs in the amount of $59,989.43. Presently before the Court is Nevada

Property's motion to confirm the arbitration award. (Dkt. No. 24.) Campbell opposes the motion, and seeks to vacate the arbitration award. (Dkt. Nos. 25–26.) For the reasons set forth below, the Court grants Nevada Property's requested relief.

## II. ANALYSIS

### A. Legal Standards

The district court "must grant . . . an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10(a) provides:

> In any of the following cases the [district court] may make an order vacating the [arbitration] award upon the application of any party to the arbitration--
>
> . . . .
>
> (4) *where the arbitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (emphasis supplied).[1] On this precise issue, the Supreme Court recently held:

> A party seeking relief under [9 U.S.C. § 10(a)(4)] bears a heavy burden. It is not enough . . . to show that the arbitrator committed an error—or even a serious error. . . . Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits. . . . Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination. . . . So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

*Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (internal quotation marks and citations omitted).

*Sutter* reinforces Ninth Circuit precedent. "Arbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely

---

[1] 9 U.S.C. § 11 is irrelevant on the instant facts.

irrational . . . or exhibits a manifest disregard of law." *Kyocera Corp. v. Prudential-Bache Trade Servcs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award." *Id.* at 994.

### B. Alleged Grounds For Vacatur

Nevada Property argues that Campbell cannot obtain vacatur of the arbitration award through his opposition to its motion to confirm the award; rather, he must seek that through his own motion. However, competing claims of award confirmation and vacatur are often determined on cross motions. *See, e.g., United Food & Comm'l Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 172–73 (9th Cir. 1995). Even though Campbell did not style his opposition as a cross-motion, he requests vacatur and the Court thus treats his filing as a cross-motion to vacate the arbitration award. *See United States v. $100,348.00 U.S. Currency*, 157 F. Supp. 2d 1110, 1112–13 (C.D. Cal. 2001) (treating opposition to summary judgment as a cross-motion for summary judgment). The Court briefly addresses each of Campbell's vacatur arguments in turn.

#### 1. Prior Rescission

This Court previously held that whether Campbell could rescind (or had rescinded) the Contract was a question for the Arbitrator. (Dkt. No. 8.) The Court declined to modify this holding upon Campbell's motion for reconsideration. (Dkt. No. 18.) Presently, there is no indication that the Arbitrator's implicit decision that Campbell did not rescind the Contract, and thus was bound by its terms, was completely irrational or exhibited a manifest disregard of law. *Kyocera*, 341 F.3d at 997.

#### 2. Arbitrator's Power to Grant Summary Judgment

The Arbitrator granted summary judgment in favor of Nevada Property. The Contract provides that "[t]he arbitrator shall have authority to award any remedy or relief that a court of the State of Nevada could grant in conformity to applicable law[,]" except punitive damages. (Contract ¶ 24.10, Dkt. No. 24-1 at 13.) Summary judgment is a form of relief that Nevada courts routinely grant in contract disputes. Nev. R. Civ. P. 56(a); *see Schettler v. RalRon Capital Corp.*, 275 P.3d 933, 942 (Nev. 2012). The source of the Arbitrator's power is a specific provision of

the Contract itself, which governs over the more general authorities provided by the applicable AAA arbitration rules. *See Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095, 1099 (9th Cir. 2006). Moreover, the Contract states that the arbitration is governed by the AAA rules, "as modified herein." The provision allowing any remedy provided by Nevada law modifies the applicable AAA rules. Granting summary judgment was within the Arbitrator's powers.

### 3. "Judicial Modification" of Unenforceable Contract Provision

Campbell contends that the Arbitrator exceeded his power under 9 U.S.C. § 10(a)(4) by exercising an authority reserved only to the courts under the Contract—the authority to modify a contract term. His argument turns on the interpretation of the term "judicially modified." Contract paragraph 24.6 provides:

> Construction. If . . . any part of this Agreement is not enforceable in accordance with its terms or would render other parts of this Agreement or this Agreement in its entirety unenforceable, the unenforceable part or parts are to be *judicially modified*, if at all possible, to come as close as possible to the expressed intent of such part or parts. If the unenforceable part or parts cannot be so modified, such part or parts shall be unenforceable and considered null and void in order that the mutual paramount goal that this Agreement is to be enforced to the maximum extent possible strictly in accordance with its terms can be achieved.

(Dkt. No. 24-1 at 12 (emphasis supplied).)

Paragraph 17.1 provides that if buyer (Campbell) breaches, "Seller shall refund to Buyer any amount which remains from the payments made after subtracting fifteen percent (15%) of the Purchase Price, exclusive of interest, or the amount of the Seller's actual damages, whichever is the greater." (*Id.* at 10.) Campbell argues that this paragraph is unenforceable in part because liquidated damages and actual damages cannot both be awarded.

The Arbitrator agreed with Campbell's conclusion, stating that the "language tying liquidated damages to actual damages . . . cannot be enforced under Nevada law, in this Arbitrator's view, as it ignores the concept of liquidated damages being set at the outset due to the difficulty in determining actual damages." (Dkt. No. 24-2 at 3.) The Arbitrator then "modifi[ed] the liquidated damages provision in the agreement as provided by [paragraph] 24.6 of the Agreement to allow for a recovery of a maximum of 15 percent of the purchase price[.]" In short, the arbitrator "judicially modified" paragraph 17.1 under the powers conferred in paragraph 24.6.

4

Campbell argues that only a court, rather than an arbitrator, has the power to *judicially* modify the Contract. Nevada Property counters that "judicially" should be more broadly interpreted to encompass the adjudicator of the dispute. Here, the Arbitrator impliedly determined that he had the power to "judicially modify" paragraph 17.1.

The Contract does not define the term "judicial." Absent a definition, arbitrators have the authority to interpret contract terms. *See United Parcel Serv. Int'l Brotherhood of Teamsters*, 2006 WL 2137146 at *3 (W.D. Wash. 2006) ("[T]he arbitrator was completely within his authority to interpret a term of the contract as he saw fit; this Court's job on review is to determine whether he was within the confines of the agreement and the issue as it was framed for him, not whether he interpreted a term of the contract 'correctly.'"); *cf. McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 733 ("By empowering the arbitrator to decide whether the job guarantees ceased by reason of the April 17, 1978 strike, the publisher impliedly agreed to have the arbitrator interpret the words "strike or lockout" in the . . . Agreement."). "Gateway" questions of arbitrability are generally within the courts' domain. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion). However, the interpretation of a particular contract term occurs after the arbitrability "gateway" has been passed. This Court previously held that the breach of contract claim was subject to arbitration. The Arbitrator thus had the authority to interpret those contractual terms necessary to resolve the dispute, such as paragraph 24.6.

The interpretation of "judicial" was essential to the Arbitrator's resolution of the breach of contract issue submitted to him, to determine damages if not the merits of the claim. *See McClatchy Newspapers*, 686 F.2d at 733. Although *Black's Law Dictionary* defines "judicial" as "[o]f, relating to, or by the court or a judge[,]" this Court is unaware of any binding authority which limits the meaning of "judicial" in a contract to apply only to courts. Bryan A. Garner, BLACK'S LAW DICTIONARY 942 (9th ed. 2009). The Arbitrator's interpretation of "judicial" was not completely irrational, nor did it exhibit a manifest disregard of law. *Kyocera*, 341 F.3d at 997. Moreover, the Arbitrator modified paragraph 17.1 in Campbell's favor, holding him liable for

15% of the Purchase Price regardless of what the actual damages were (assuming, *arguendo*, that the actual damages were even calculable).

Alternatively, the Arbitrator's self-styled "modification" of paragraph 17.1 could be viewed instead as a consideration of paragraph 17.1 with the unenforceable clause concerning actual damages rendered null and void. As quoted above, paragraph 24.1 provides that if an unenforceable part of the Contract cannot be judicially modified, then that part will be considered null and void. If the alternative remedy of actual damages were considered null and void, the either/or choice between liquidated damages and actual damages would have only one possible result: liquidated damages. Even though the Arbitrator explained that he "modified" paragraph 17.1, he would have seemingly obtained the same result had he declined to exercise the power of judicial modification and simply treated the offending phrase as null and void.

Finally, even if the Arbitrator exceeded his power under 9 U.S.C. § 10(a)(4) by modifying paragraph 17.1, his overreach would not compel vacatur. Under section 10(a), the district court's power to vacate an arbitration order is permissive, not mandatory. Because the paragraph at issue concerns only the damages calculation (not the merits of the case), there is currently no other plausible means to calculate the damages, the parties agreed that "actual damages resulting from a breach by Buyer are extremely difficult to estimate[,]" the liquidated damages allowed under the Contract are 15% of the Purchase Price (even if paragraph 17.1 were enforceable on its face), and the Arbitrator awarded damages in the amount of 15% of the Purchase Price, the Court would not vacate the arbitration award solely based on this possible overreach.

In sum, the Court will not vacate the arbitration award on the ground of overreach under 9 U.S.C. § 10(a)(4). The Arbitrator acted within the scope of his contractually delegated authority; the arbitration award drew its essence from the Contract rather than the Arbitrator's own notions economic justice. *Sutter*, 133 S. Ct. at 2068.

### 4. The Propriety of Summary Judgment

Campbell argues that the Arbitrator should not have granted summary judgment because of three genuine disputes of material fact: (i) a "mutual assumption" that conventional financing would be available upon completion of the West Tower; (ii) a "mutual assumption" that the West

Tower would be completed in early 2008; and (iii) a "mutual assumption" that neither party would violate the implied covenant of good faith and fair dealing.

Campbell appears to seek a *de novo* review of the summary judgment award, as if this Court were sitting as a court of appeals over the arbitration proceeding. But that is not the circumstance. The Arbitrator had the authority to determine whether there were any genuine disputes of material fact that precluded summary judgment. Upon review of the arbitration award, this Court cannot say that the Arbitrator's decision was completely irrational or in manifest disregard of the law. *Kyocera*, 341 F.3d at 997. The Arbitrator's determination that the first two of these "mutual assumptions" were properly construed as risks taken by both parties to the agreement is not completely irrational. The third of Campbell's so-called "mutual assumptions" is irrelevant in that all contracting parties are bound by the implied covenant of good faith and fair dealing.

### III. CONCLUSION

In accord with the above, the Court GRANTS the motion to confirm the arbitration award. (Dkt. No. 24.)

DATED this 20th day of November, 2013.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

7