1

2

3

4

5        UNITED STATES DISTRICT COURT

6        DISTRICT OF NEVADA

7                              * * *

8    LEON E. CAMPBELL,                    Case No. 2:10-cv-02169-APG-PAL

9                    Plaintiff,
                                          **ORDER GRANTING MOTION TO CONFIRM**
10       v.                               **ARBITRATION AWARD**

11   NEVADA PROPERTY 1 LLC,
                                          (Dkt. No. 24)
12                   Defendant.

13

14

15   **I.    BACKGROUND**

16          The origin of this dispute is a failed condominium purchase at The Cosmopolitan of Las

17   Vegas in Las Vegas, Nevada.  In December 2010, Plaintiff Leon E. Campbell ("Campbell" or

18   "Buyer") filed a complaint against Nevada Property 1 LLC ("Nevada Property" or "Seller"), the

19   current owner of the Cosmopolitan, seeking declaratory judgment concerning his asserted right to

20   rescind a contract to purchase a condominium (the "Contract"). (Dkt. No. 1.)  In October 2011,

21   the Court granted Nevada Property's motion to compel arbitration. (Dkt. No. 5.)  The Ninth

22   Circuit dismissed Campbell's subsequent appeal of the order compelling arbitration because it

23   was interlocutory in nature. (Dkt. No. 15.)  This Court then denied Campbell's motion for

24   reconsideration. (Dkt. No. 18.)

25          On January 2, 2013, arbitrator Philip J. Dabney (the "Arbitrator") issued his final order in

26   Nevada Property's favor. (Dkt. No. 24-2 at 2–4.)  He awarded Nevada Property liquidated

27   damages in the amount of $74,625 (15% of the purchase price of the condominium) and

28   attorney's fees and costs in the amount of $59,989.43.  Presently before the Court is Nevada

1   Property's motion to confirm the arbitration award. (Dkt. No. 24.)  Campbell opposes the motion,

2   and seeks to vacate the arbitration award. (Dkt. Nos. 25–26.)  For the reasons set forth below, the

3   Court grants Nevada Property's requested relief.

4

5   **II.    ANALYSIS**

6        **A.    Legal Standards**

7        The district court "must grant . . . an order [confirming an arbitration award] unless the

8   award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9

9   U.S.C. § 9.  Section 10(a) provides:

10       In any of the following cases the [district court] may make an order vacating the
         [arbitration] award upon the application of any party to the arbitration--
11

12            . . . .

13            (4) *where the arbitrators exceeded their powers*, or so imperfectly executed
              them that a mutual, final, and definite award upon the subject matter
              submitted was not made.
14

15   9 U.S.C. § 10(a) (emphasis supplied).[1]  On this precise issue, the Supreme Court recently

16   held:

17       A party seeking relief under [9 U.S.C. § 10(a)(4)] bears a heavy burden.  It is not
         enough . . . to show that the arbitrator committed an error—or even a serious error.
18       . . . Because the parties bargained for the arbitrator's construction of their
         agreement, an arbitral decision even arguably construing or applying the contract
19       must stand, regardless of a court's view of its (de)merits. . . . Only if the arbitrator
         acts outside the scope of his contractually delegated authority—issuing an award
20       that simply reflects his own notions of economic justice rather than drawing its
         essence from the contract—may a court overturn his determination. . . . So the sole
21       question for us is whether the arbitrator (even arguably) interpreted the parties'
         contract, not whether he got its meaning right or wrong.
22
     *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (internal quotation marks and
23
     citations omitted).
24
         *Sutter* reinforces Ninth Circuit precedent.  "Arbitrators exceed their powers . . . not when
25
     they merely interpret or apply the governing law incorrectly, but when the award is completely
26

27   _____

28       [1] 9 U.S.C. § 11 is irrelevant on the instant facts.

1    irrational . . . or exhibits a manifest disregard of law." *Kyocera Corp. v. Prudential-Bache Trade*
2    *Servcs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003). "Neither erroneous legal conclusions nor
3    unsubstantiated factual findings justify federal court review of an arbitral award." *Id.* at 994.

### B.    Alleged Grounds For Vacatur

5          Nevada Property argues that Campbell cannot obtain vacatur of the arbitration award
6    through his opposition to its motion to confirm the award; rather, he must seek that through his
7    own motion. However, competing claims of award confirmation and vacatur are often
8    determined on cross motions. *See, e.g.*, *United Food & Comm'l Workers Int'l Union, Local 588 v.*
9    *Foster Poultry Farms*, 74 F.3d 169, 172–73 (9th Cir. 1995). Even though Campbell did not style
10   his opposition as a cross-motion, he requests vacatur and the Court thus treats his filing as a
11   cross-motion to vacate the arbitration award. *See United States v. $100,348.00 U.S. Currency*,
12   157 F. Supp. 2d 1110, 1112–13 (C.D. Cal. 2001) (treating opposition to summary judgment as a
13   cross-motion for summary judgment). The Court briefly addresses each of Campbell's vacatur
14   arguments in turn.

### 1.    Prior Rescission

16          This Court previously held that whether Campbell could rescind (or had rescinded) the
17   Contract was a question for the Arbitrator. (Dkt. No. 8.) The Court declined to modify this
18   holding upon Campbell's motion for reconsideration. (Dkt. No. 18.) Presently, there is no
19   indication that the Arbitrator's implicit decision that Campbell did not rescind the Contract, and
20   thus was bound by its terms, was completely irrational or exhibited a manifest disregard of law.
21   *Kyocera*, 341 F.3d at 997.

### 2.    Arbitrator's Power to Grant Summary Judgment

23          The Arbitrator granted summary judgment in favor of Nevada Property. The Contract
24   provides that "[t]he arbitrator shall have authority to award any remedy or relief that a court of the
25   State of Nevada could grant in conformity to applicable law[,]" except punitive damages.
26   (Contract ¶ 24.10, Dkt. No. 24-1 at 13.) Summary judgment is a form of relief that Nevada courts
27   routinely grant in contract disputes. NEV. R. CIV. P. 56(a); *see Schettler v. RalRon Capital Corp.*,
28   275 P.3d 933, 942 (Nev. 2012). The source of the Arbitrator's power is a specific provision of

1    the Contract itself, which governs over the more general authorities provided by the applicable

2    AAA arbitration rules. *See Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095, 1099 (9th Cir.

3    2006). Moreover, the Contract states that the arbitration is governed by the AAA rules, "as

4    modified herein." The provision allowing any remedy provided by Nevada law modifies the

5    applicable AAA rules. Granting summary judgment was within the Arbitrator's powers.

6               **3.    "Judicial Modification" of Unenforceable Contract Provision**

7               Campbell contends that the Arbitrator exceeded his power under 9 U.S.C. § 10(a)(4) by

8    exercising an authority reserved only to the courts under the Contract—the authority to modify a

9    contract term. His argument turns on the interpretation of the term "judicially modified."

10   Contract paragraph 24.6 provides:

11              Construction.  If . . . any part of this Agreement is not enforceable in accordance
             with its terms or would render other parts of this Agreement or this Agreement in
12           its entirety unenforceable, the unenforceable part or parts are to be *judicially*
             *modified*, if at all possible, to come as close as possible to the expressed intent of
13           such part or parts.  If the unenforceable part or parts cannot be so modified, such
             part or parts shall be unenforceable and considered null and void in order that the
14           mutual paramount goal that this Agreement is to be enforced to the maximum
             extent possible strictly in accordance with its terms can be achieved.
15

16   (Dkt. No. 24-1 at 12 (emphasis supplied).)

17              Paragraph 17.1 provides that if buyer (Campbell) breaches, "Seller shall refund to Buyer

18   any amount which remains from the payments made after subtracting fifteen percent (15%) of the

19   Purchase Price, exclusive of interest, or the amount of the Seller's actual damages, whichever is

20   the greater." (*Id.* at 10.) Campbell argues that this paragraph is unenforceable in part because

21   liquidated damages and actual damages cannot both be awarded.

22              The Arbitrator agreed with Campbell's conclusion, stating that the "language tying

23   liquidated damages to actual damages . . . cannot be enforced under Nevada law, in this

24   Arbitrator's view, as it ignores the concept of liquidated damages being set at the outset due to the

25   difficulty in determining actual damages." (Dkt. No. 24-2 at 3.)   The Arbitrator then "modifi[ed]

26   the liquidated damages provision in the agreement as provided by [paragraph] 24.6 of the

27   Agreement to allow for a recovery of a maximum of 15 percent of the purchase price[.]"  In short,

28   the arbitrator "judicially modified" paragraph 17.1 under the powers conferred in paragraph 24.6.

1    Campbell argues that only a court, rather than an arbitrator, has the power to *judicially*
2    modify the Contract. Nevada Property counters that "judicially" should be more broadly
3    interpreted to encompass the adjudicator of the dispute. Here, the Arbitrator impliedly
4    determined that he had the power to "judicially modify" paragraph 17.1.

5    The Contract does not define the term "judicial." Absent a definition, arbitrators have the
6    authority to interpret contract terms. *See United Parcel Serv. Int'l Brotherhood of Teamsters*,
7    2006 WL 2137146 at *3 (W.D. Wash. 2006) ("[T]he arbitrator was completely within his
8    authority to interpret a term of the contract as he saw fit; this Court's job on review is to
9    determine whether he was within the confines of the agreement and the issue as it was framed for
10   him, not whether he interpreted a term of the contract 'correctly.'"); *cf. McClatchy Newspapers v.*
11   *Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 733 ("By
12   empowering the arbitrator to decide whether the job guarantees ceased by reason of the April 17,
13   1978 strike, the publisher impliedly agreed to have the arbitrator interpret the words "strike or
14   lockout" in the . . . Agreement."). "Gateway" questions of arbitrability are generally within the
15   courts' domain. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality
16   opinion). However, the interpretation of a particular contract term occurs after the arbitrability
17   "gateway" has been passed. This Court previously held that the breach of contract claim was
18   subject to arbitration. The Arbitrator thus had the authority to interpret those contractual terms
19   necessary to resolve the dispute, such as paragraph 24.6.

20   The interpretation of "judicial" was essential to the Arbitrator's resolution of the breach of
21   contract issue submitted to him, to determine damages if not the merits of the claim. *See*
22   *McClatchy Newspapers*, 686 F.2d at 733. Although *Black's Law Dictionary* defines "judicial" as
23   "[o]f, relating to, or by the court or a judge[,]" this Court is unaware of any binding authority
24   which limits the meaning of "judicial" in a contract to apply only to courts. Bryan A. Garner,
25   BLACK'S LAW DICTIONARY 942 (9th ed. 2009). The Arbitrator's interpretation of "judicial" was
26   not completely irrational, nor did it exhibit a manifest disregard of law. *Kyocera*, 341 F.3d at 997.
27   Moreover, the Arbitrator modified paragraph 17.1 in Campbell's favor, holding him liable for
28

5

1  15% of the Purchase Price regardless of what the actual damages were (assuming, *arguendo*, that

2  the actual damages were even calculable).

3       Alternatively, the Arbitrator's self-styled "modification" of paragraph 17.1 could be

4  viewed instead as a consideration of paragraph 17.1 with the unenforceable clause concerning

5  actual damages rendered null and void. As quoted above, paragraph 24.1 provides that if an

6  unenforceable part of the Contract cannot be judicially modified, then that part will be considered

7  null and void. If the alternative remedy of actual damages were considered null and void, the

8  either/or choice between liquidated damages and actual damages would have only one possible

9  result: liquidated damages. Even though the Arbitrator explained that he "modified" paragraph

10  17.1, he would have seemingly obtained the same result had he declined to exercise the power of

11  judicial modification and simply treated the offending phrase as null and void.

12       Finally, even if the Arbitrator exceeded his power under 9 U.S.C. § 10(a)(4) by modifying

13  paragraph 17.1, his overreach would not compel vacatur. Under section 10(a), the district court's

14  power to vacate an arbitration order is permissive, not mandatory. Because the paragraph at issue

15  concerns only the damages calculation (not the merits of the case), there is currently no other

16  plausible means to calculate the damages, the parties agreed that "actual damages resulting from a

17  breach by Buyer are extremely difficult to estimate[,]" the liquidated damages allowed under the

18  Contract are 15% of the Purchase Price (even if paragraph 17.1 were enforceable on its face), and

19  the Arbitrator awarded damages in the amount of 15% of the Purchase Price, the Court would not

20  vacate the arbitration award solely based on this possible overreach.

21       In sum, the Court will not vacate the arbitration award on the ground of overreach under 9

22  U.S.C. § 10(a)(4). The Arbitrator acted within the scope of his contractually delegated authority;

23  the arbitration award drew its essence from the Contract rather than the Arbitrator's own notions

24  economic justice. *Sutter*, 133 S. Ct. at 2068.

25       **4.    The Propriety of Summary Judgment**

26       Campbell argues that the Arbitrator should not have granted summary judgment because

27  of three genuine disputes of material fact: (i) a "mutual assumption" that conventional financing

28  would be available upon completion of the West Tower; (ii) a "mutual assumption" that the West

1  Tower would be completed in early 2008; and (iii) a "mutual assumption" that neither party

2  would violate the implied covenant of good faith and fair dealing.

3        Campbell appears to seek a *de novo* review of the summary judgment award, as if this

4  Court were sitting as a court of appeals over the arbitration proceeding.  But that is not the

5  circumstance.  The Arbitrator had the authority to determine whether there were any genuine

6  disputes of material fact that precluded summary judgment.  Upon review of the arbitration

7  award, this Court cannot say that the Arbitrator's decision was completely irrational or in

8  manifest disregard of the law. *Kyocera*, 341 F.3d at 997.  The Arbitrator's determination that the

9  first two of these "mutual assumptions" were properly construed as risks taken by both parties to

10 the agreement is not completely irrational.  The third of Campbell's so-called "mutual

11 assumptions" is irrelevant in that all contracting parties are bound by the implied covenant of

12 good faith and fair dealing.

13

14 **III.    CONCLUSION**

15       In accord with the above, the Court GRANTS the motion to confirm the arbitration award.

16 (Dkt. No. 24.)

17

18       DATED this 20th day of November, 2013.

19

20                               ANDREW P. GORDON

21                               UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28